# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-960V
UNPUBLISHED

| | |
|---|---|
| TRACY SPRINKLE,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: December 12, 2022<br><br>Special Processing Unit (SPU);<br>Table Injury; Influenza (Flu) Vaccine;<br>Shoulder Injury Related to Vaccine<br>Administration (SIRVA) |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Zoe Wade, U.S. Department of Justice, Washington, DC,* for Respondent.

### **FACT RULING**[1]

On August 3, 2020, Tracy Sprinkle filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on September 29, 2019. Petition, ECF No. 1 at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons detailed herein, I find Petitioner likely received the subject flu vaccination in her *right* arm.

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.     **Relevant Procedural History**

A year after the claim's initiation, Respondent filed his Rule 4(c) Report challenging compensation because (among other things) Petitioner failed to demonstrate that she received the relevant vaccination in her *right* arm because the vaccination record indicates the *left* arm. ECF No. 18 at 3-4. On July 1, 2022, Petitioner filed her Motion for a Factual Ruling. ECF No. 22. Petitioner asserted that the evidentiary record demonstrates she received the September 29, 2019 flu vaccine in her right arm, thereafter suffering a right SIRVA. *Id.* at 1. However, Respondent maintained that the "contemporaneous vaccination record preponderantly demonstrates that the influenza ("flu") vaccine was administered to petitioner's left deltoid," outweighing later testimony. No. 23 at 2. Petitioner filed a Reply on August 16, 2022, submitting that the "majority of the evidence," not just testimony, indicates Petitioner's flu vaccination in her right shoulder. ECF No. 24 at 1.

The matter is ripe for adjudication.

II.     **Legal Standards**

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Medical records created contemporaneously with the events they describe are generally considered to be more trustworthy. *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993); *but see Kirby v. Sec'y of Health & Human Servs.*, 993 F.3d 1378, 1382-83 (Fed. Cir. 2021) (clarifying that *Cucuras* does not stand for proposition that medical records are presumptively accurate and complete). While not presumed to be complete and accurate, medical records made while seeking treatment are generally afforded more weight than statements made by petitioner after-the-fact. *See Gerami v. Sec'y of Health & Human Servs.*, No. 12-442V, 2013 WL 5998109, at *4 (Fed. Cl. Spec. Mstr. Oct. 11, 2013) (finding that contemporaneously documented medical evidence was more persuasive than the letter

prepared for litigation purposes), *mot. for rev. denied*, 127 Fed. Cl. 299 (2014). Indeed, "where later testimony conflicts with earlier contemporaneous documents, courts generally give the contemporaneous documentation more weight." *Campbell ex rel. Campbell v. Sec'y of Health & Human Servs.*, 69 Fed. Cl. 775, 779 (2006); *see United States v. U.S. Gypsum Co.*, 333 U.S. 364, 396 (1948).

### III.     Factual Findings

At issue is whether Petitioner's September 29, 2019 vaccination was administered in her right or left arm. After a review of the entire record, including Respondent's Rule 4 Report and the parties' briefs, I find that Petitioner most likely received the vaccination in her right arm, as alleged.[3] Specifically, I note the following:

- On September 29, 2019, Petitioner received a flu vaccine at Walgreens. Ex. 1 at 4-5. The administrator circled the "L" in "L/R" to indicate site of administration. *Id.* at 5.

- On October 15, 2019, just sixteen days after vaccination, Petitioner presented to an orthopedist, Dr. James Starman, complaining of *severe right shoulder pain*. Ex. 4 at 63 (emphasis added). She reported pain since her flu vaccine, very limited range of motion, and difficulty sleeping. *Id.* at 65. Following an examination that revealed limited range of motion and positive signs of impingement, Dr. Starman diagnosed Petitioner with right shoulder pain status-post flu vaccination with evidence of an inflammatory response. *Id.* at 67. Petitioner was recommended and received a corticosteroid injection in her right shoulder. *Id.*

- Petitioner returned to Dr. Starman the following month on November 25, 2019, reporting that the injection only provided temporary relief for her right shoulder pain. Ex. 4 at 60. Petitioner showed improvement but still had limited range of motion, signs of impingement, and pain. *Id.* at 59-60. Petitioner received a second corticosteroid injection in her right shoulder. *Id.* at 60.

- Petitioner returned to Dr. Starman on December 23, 2019, reporting that she was still experiencing right shoulder pain. Petitioner continued to have limitations in range of motion. Ex. 4 at 56. Dr. Starman ordered a right shoulder MRI and prescribed Meloxicam (Mobic). *Id.* at 55.

---

[3] While I have not specifically addressed every medical record, or all arguments presented in the parties' briefs, I have fully considered all records as well as arguments presented by both parties.

3

- An MRI of Petitioner's right shoulder was taken on December 30, 2019. Ex. 4 at 55. The MRI showed a full thickness tear of the posterior supraspinatus tendon footprint, tendinosis, some fluid in the subacromial bursa, and mild acromioclavicular arthrosis. *Id.*

- On January 6, 2020, following review of Petitioner's MRI results, Dr. Starman diagnosed Petitioner with a right shoulder rotator cuff tear and subacromial bursitis. Ex. 4 at 52. Dr. Starman recommended Petitioner undergo right shoulder arthroscopy. *Id.*

- On February 19, 2020, Petitioner underwent right shoulder arthroscopy that included bursal debridement, subacromial acromioplasty, and rotator cuff repair. Ex. 4 at 41-43.

- Petitioner began physical therapy on March 12, 2020. Ex. 4 at 28. At her initial session, Petitioner reported intermittent pain at levels of 3-4 out of 10 and pain when lifting, reaching, bending, or twisting her arm. *Id.*

- On May 8, 2020, Petitioner presented to Dr. Starman for a post-operative follow-up. Ex. 4 at 5. He noted that Petitioner reported "essentially 0" pain, taking no pain medications, no problems with the surgical incisions, and making good progress in physical therapy. *Id.* Petitioner demonstrated "active range of motion up to 170 degrees." *Id.*

- Petitioner underwent a total of ten physical therapy sessions and was discharged after May 13, 2020. Ex. 4 at 3. She had made good progress and was to continue with home exercises. *Id.*

In addition to the medical records, Petitioner filed a short affidavit affirming receipt of the September 29, 2019 flu vaccination in her right shoulder. Ex. 6. Though the "left shoulder is circled as the location of vaccination…it is incorrect." *Id.* ¶¶3-4.

I find that the records taken in their totality solidly support Petitioner's contention that the September 29, 2019 vaccination was likely administered in her *right* arm. The only medical record indicating otherwise is Petitioner's initial vaccination record. Ex. 1 at 5. Respondent argues that this record deserves the most weight because it was created contemporaneously with the administration of Petitioner's vaccination, giving it more probative value than later testimony. ECF No. 23 at 2; *Kirby v. Sec'y Health & Hum. Servs.*, 997 F.3d 1378, 1382 (Fed. Cir. 2021)) ("not erroneous to give greater weight to contemporaneous medical records than to later, contradictory testimony").

However, vaccine records *can* be erroneous (particularly when the selection of situs is only indicated by a handwritten mark), even if they are deemed to correctly identify vaccination situs in many other cases. And here, the record at issue must be weighed against Petitioner's report of a right arm pain just sixteen days after vaccination. When Petitioner reported first right shoulder pain to Dr. Starman in October of 2019, she related the issue to her September vaccination. Ex. 4 at 63. Also, Dr. Starman noted evidence of an inflammatory response in Petitioner's right shoulder at that visit. After the October visit, Petitioner continued to consistently relate her right arm pain and limitations to the September 2019 vaccination. *See* Ex. 4 at 28, 56, 60.

It is certainly true that the initial record of vaccine situs contradicts Petitioner's contention (although in a somewhat cursory fashion). But that record itself lacks later corroboration – whereas the entire body of medical records following vaccination indicate administration of the flu vaccine in Petitioner's right arm. All of this is also consistent with Petitioner's own allegations; even if they alone cannot rebut the record, they bulwark other contemporaneous evidence. Thus, preponderant proof supports Petitioner's contention about situs.

## Conclusion

Based on the entire record, I find that Petitioner has established receipt of the subject vaccination in her right arm. In light of the lack of additional objections in Respondent's Rule 4(c) Report and the straightforward nature of this case, **I recommend that the parties engage in settlement discussions. A scheduling order will be issued shortly for the conveyance of Petitioner's demand.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master