# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 20-0960V**

TRACY SPRINKLE,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: August 15, 2024

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Zoe Wade, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On August 3, 2020, Tracy Sprinkle filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine received on September 29, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore briefed the matter for my

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

consideration. For the reasons discussed below, I find that Petitioner is entitled to compensation in the amount of $105,000.00 for her actual pain and suffering, plus $1,790.88 (uncontested) for her unreimbursable medical expenses.

## I. Procedural History

As stated above, on February 6, 2023, I issued a ruling on entitlement in favor of Petitioner. The parties were unable to agree on an appropriate amount of damages, however, and therefore agreed to brief their dispute. ECF Nos. 37-39. On May 15, 2023, Petitioner filed her brief in support of damages ("Mot."), and Respondent filed a Response on July 12, 2023 ("Opp."). Petitioner filed a reply ("Reply") memorandum on August 8, 2023. ECF Nos. 38-39. This case is now ready for adjudication.

## II. Relevant Medical History

A complete recitation of the facts can be found in the Petition, affidavits, my Findings of Fact and Conclusions of Law, Respondent's Rule 4(c) Report, and the parties' respective motions and pleadings. While I have not specifically addressed every medical record, or all arguments presented in the parties' briefs, I have fully considered all records as well as arguments presented by both parties.

Ms. Sprinkle was a 60-year-old health insurance customer service representative at the time she received a flu vaccine in her right shoulder at Walgreens Pharmacy on September 29, 2019.[3] Ex. 1 at 4-5; Her past medical history is unremarkable for any type of right shoulder pain or dysfunction. *See generally* Exs. 2-3.

On October 15, 2019, just 16 days after vaccination, Ms. Sprinkle presented to an orthopedist, Dr. James Starman at OrthoCarolina, complaining of severe right shoulder pain. Ex. 4 at 63-67. She reported pain since her vaccination, very limited range of motion, and difficulty sleeping. *Id.* at 65. Following a physical examination that revealed limited range of motion and positive signs of impingement, Dr. Starman diagnosed Petitioner with right shoulder pain status-post flu vaccination with evidence of an inflammatory response. *Id.* at 67. Ms. Sprinkle rated her pain at a level of 8-9/10 and was recommended and received a corticosteroid injection in her right shoulder. *Id.*

Ms. Sprinkle returned to Dr. Starman the following month on November 25, 2019, reporting that the injection only provided temporary relief for her right shoulder pain. Ex. 4 at 60. Petitioner showed improvement but still had limited range of motion, signs of

[3] On December 12, 2022, I issued Findings of Fact and Conclusions of Law in which I found that Petitioner had established receipt of the subject vaccination in her right arm. ECF No. 25.

impingement, and pain. *Id.* at 59-60. She rated her pain at a 5/10 at this time and received a second corticosteroid injection in her right shoulder. *Id.* at 60.

Ms. Sprinkle returned to Dr. Starman on December 23, 2019, reporting that she was still experiencing right shoulder pain. Petitioner continued to have limitations in range of motion. Ex. 4 at 56. Dr. Starman ordered a right shoulder MRI and prescribed Meloxicam. *Id.* at 55. Later that same month, Petitioner underwent an MRI of her right shoulder. Ex. 4 at 55. The MRI showed a full thickness tear of the posterior supraspinatus tendon footprint, tendinosis, some fluid in the subacromial bursa, and mild acromioclavicular arthrosis. *Id.*

On January 6, 2020, following review of Petitioner's MRI results, Dr. Starman diagnosed Ms. Sprinkle with a right shoulder rotator cuff tear and subacromial bursitis. Ex. 4 at 52. She rated her pain at a 3-4/10 at this time. *Id*. at 53. Dr. Starman recommended Petitioner undergo right shoulder arthroscopy. *Id.*

On February 19, 2020, Ms. Sprinkle underwent right shoulder arthroscopic surgery that included bursal debridement, subacromial acromioplasty, and rotator cuff repair. Ex. 4 at 41-43. She began physical therapy on March 12, 2020. Ex. 4 at 28. At her initial session, Petitioner reported intermittent pain at levels of 3-4 out of 10 and pain when lifting, reaching, bending, or twisting her arm. *Id.*

On May 8, 2020, Ms. Sprinkle presented to Dr. Starman for a post-operative follow-up. Ex. 4 at 5. He noted that Petitioner reported "essentially 0" pain, taking no pain medications, no problems with the surgical incisions, and making good progress in physical therapy. *Id.* Petitioner demonstrated "active range of motion up to 170 degrees." *Id.* Petitioner subsequently underwent a total of 10 physical therapy sessions and was discharged after May 13, 2020. *Id.* at 3. She had made good progress and was to continue with home exercises. *Id.*

On June 19, 2020, Ms. Sprinkle returned to Dr. Starman for a four month post operative appointment. Ex. 9 at 4. She reported some minor restrictions but was close to full use of the shoulder. *Id*. at 4-5.

## III. The Parties' Arguments

### a. Petitioner

In her brief, Ms. Sprinkle noted that she sought treatment for her injury quickly – just 16 days after vaccination, and immediately reported "severe" pain at a level of 8-9/10. Mot. at 7. She stated that she was unable to perform everyday activities and was having

problems simply moving her arm. *Id*. Ms. Sprinkle stated that even seven months post-vaccination, she continued to experience soreness and reduced range of motion. *Id*. at 8. Thus, based on the facts and circumstances of her case, Petitioner contends that she is entitled to an award of $115,000.00 in past pain and suffering. *Id*. at 9.

Petitioner cited to five cases in support of her claim for past pain and suffering: (1) *Cosden v. Sec'y of Health & Human Servs.*, No 20-1783V, 2023 WL 2469255 (Fed. Cl. Spec. Mstr. Feb. 9, 2023), (2) *Kestner v. Sec'y of Health & Human Servs.*, No. 20-0025V, 2023 WL 2447499 (Fed. Cl. Spec. Mstr. Feb. 3, 2023), (3) *Issertell v. Health & Human Servs.*, No. 20-0099V, 2022 WL 2288247 (Fed. Cl., May 17, 2022), *Vaccaro v. Sec'y of Health & Human Servs.*, No. 19-1883V, 2022 WL 662550 (Fed. Cl. Spec. Mstr. Feb 2, 2022), and (5) *Moore v. Sec'y of Health & Human Servs*., No. 19-1850V, 2022 WL 962524 (Fed. Cl. Spec. Mstr. Feb. 25, 2022). In all, the petitioners were awarded sums ranging from $110,000.00 to $115,000.00 for their past pain and suffering.

**b. Respondent**

Respondent has argued that Petitioner's SIRVA was "mild to moderate," and thus I should award for past pain and suffering "a lower amount that is consistent with the evidence presented." Opp at 5. Respondent has argued that Petitioner's treatment course was "relatively short in duration," and that she underwent arthroscopic surgery less than five months post vaccination. Opp. at 5. Following surgery, Petitioner "achieved full pain relief within two-months of PT and was 'clinically healed' less than nine months after vaccination." *Id*.

Respondent attempted to distinguish the five cases cited by Petitioner, noting that these were all surgical cases where the length of treatment exceeded Ms. Sprinkle's length of treatment of only nine months, there were more extensive courses of physical therapy, and/or the petitioners in those cases experienced more severe pain. Opp at 6-9. Respondent argued that in the present case, "neither the facts of this case, nor the decisions relied on by petitioner, support a pain and suffering damages award of $115,00.00." Opp. at 8.

Respondent does not provide any proposed specific amount to award Petitioner for her pain and suffering, stating that I should simply calculate the award in a manner "consistent with the evidence presented." Opp at 5. Respondent thus offered no case support and no evidence to support a lower figure, other than attempting to distinguish the cases cited by Petitioner.

## IV. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## V. Appropriate Compensation in this SIRVA Case

### a. Awareness of Suffering

Neither party disputes that that Ms. Sprinkle had full awareness of her suffering, and I find that fact is supported by the record evidence.

### b. Severity and Duration of Pain and Suffering

Ms. Sprinkle's SIRVA injury required surgical intervention and an overall treatment course of nine months. The five cases cited by Petitioner are good and reasonable comparable cases, all involving surgery and similar treatment lengths. However, there are a few distinguishing factors that warrant a slightly lesser award than those awarded in *Cosden*, *Kestner, Vaccaro, Issertell,* and *Moore*. In *Moore*, for example, the petitioner completed 24 sessions of physical therapy; in *Cosden* and *Vaccaro*, the petitioners each underwent 28 physical therapy sessions, while in *Kestner*, the petitioner completed 29 sessions of physical therapy. In *Moore*, the petitioner's total treatment course spanned 15 months, although there was a four-month treatment gap. Thus, each case presented a slightly more severe injury than herein, whether it be due to more severe pain (e.g., *Cosden*, *Issertell,* and *Vaccaro*), more treatment (*e.g., Kestner, Vaccaro,* and *Moore),* extenuating circumstances *(Kestner* - where the Petitioner's pain interfered with her work as a nurse, and she had to stop working for six weeks) or a longer treatment course (*Kestner, Vaccaro* and *Moore*).

Respondent argued that Petitioner's pain rating was mild to moderate, because when she initially presented on October 15, 2019, she rated her pain at a fairly high level, but by December 23, 2019, and with conservative treatment, Petitioner's pain had decreased. Opp. At 5. Then, the week after surgery in February 2020, her pain remained at a lower level, and she was only taking Tylenol as needed. *Id*. Petitioner's pain continued to decrease over the course of PT. *Id.* By May 8, 2020, about seven months post-vaccination, Petitioner's pain was "essentially 0." *Id*. Petitioner, on the other hand, noted that she reported "severe pain" initially. Mot. at 7. It was only after physical therapy and two cortisone injections, that her pain level began to decrease. *Id*. at 8.

Overall, Ms. Sprinkle's injury involves a mild to severe surgical SIRVA injury that impacted her personal life as an employee and grandmother, affected her sleep, ability to care for herself and to engage in normal everyday activities such as laundry, cooking, and cleaning. She reported her injury to a medical provider very quickly, just 16 days post vaccination, underwent surgery, one round of physical therapy totaling 10 sessions, two steroid injections, one x-ray and one MRI. Ex. Ex. 4 at 3-26, 36-43, 52-56, 59-67; Ex. 12

at 1. However, the overall treatment length and course undermines, slightly, the conclusion that the injury was extremely severe.

Respondent's decision to not offer a competing amount, or even one comparable case supporting such a figure, did little to help resolve the dispute. Presumably, Respondent believes that his best offer was made when he tendered a proffer to Petitioner. However, I have repeatedly noted that proffers only reflect *Respondent's* judgment as to the correct damages sum, and thus (while they may or may not be legally defensible or persuasive) are not as useful in determining damages as a reasoned determination by a special master. As I have stated in this and prior decisions, Respondent runs the risk that I will simply adopt the Petitioner's figure if this approach is maintained in future cases.

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$105,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case. Respondent has not objected to the amount Petitioner has requested for past unreimbursable expenses, and thus, award the full amount requested of $1,790.88.

## CONCLUSION

Based on my consideration of the complete record as a whole, **I find that $105,000.00, represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[4] **I also find that Petitioner is entitled to $1,790.88 in actual unreimbursable expenses.**

**Accordingly, I award Petitioner a lump sum payment of $106,790.88, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this decision.[5]

---

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master